730 F.2d 300
 15 Fed. R. Evid. Serv. 878
 Eddie LONGORIA, Deceased, by Elias LONGORIA, As Temporary
Administrator of his Estate, Plaintiff-Appellee,
v.
B.T. WILSON, Individually and in his official capacity as a
Police Officer of the City of McAllen, Texas,
Defendant-Appellant.
 No. 82-2127.
 United States Court of Appeals,
Fifth Circuit.
 April 23, 1984.
 
 John E. Lewis, B. Buck Pettitt, McAllen, Tex., for defendant-appellant.
 James C. Harrington, Austin, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, WISDOM and JOHNSON, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 In this appeal from an award of liability in a civil rights case, B.T. Wilson contends that the District Court erred in failing to conduct an evidentiary hearing regarding the existence of a post-judgment settlement. We agree, thus, we vacate and remand for that purpose. Wilson also asserts error on three independent bases: first, he claims that certain testimony should have been inadmissible at trial under the Texas Dead Man's Statute; second, that attempted violations of the Court's motion in limine constituted a basis for mistrial; and third, that punitive damages were improperly awarded. We find that any such error was harmless and affirm the judgment as to those claims.
 
 A Tale of Two Lawsuits
 
 2
 We are faced in this appeal with the confusing product of two lawsuits. The first is a class action, filed in 1976, in which appellee Longoria[1] and at least eight other named plaintiffs charged the City of McAllen, Texas, its Police Chief, and at least 15 individual police officers with violations of their civil rights under 42 U.S.C. Secs. 1983, 1985, 1986 and the Fourteenth Amendment. The second case, an individual action by appellee Longoria against former McAllen Police Officer B.T. Wilson (charging essentially the same deprivations) was severed from the class action by the Court's order of April 10, 1980, along with those of all the other individual plaintiffs against the individual officers. The remaining class action, against the City and the Police Chief, styled Guadalupe Cano, et al. v. Jesse Colbath, et al. (S.D.Tex., Brownsville Div., CA 76-B-52), was to be tried following resolution of the individual claims.
 
 
 3
 Eddie Longoria's individual action against Wilson was tried in the fall of 1980. In this action, Longoria alleged that Wilson severely assaulted and battered him following an unlawful arrest. The jury found that although Wilson did not unlawfully arrest Longoria, he did employ excessive force against Longoria while Longoria was in custody. On October 28, 1980, after the jury's verdict for $15,000 in actual and $15,000 in punitive damages, a final judgment against Wilson was entered. Wilson filed a motion for new trial on November 5, 1980, alleging several bases for error in the judgment. We address three of those asserted errors infra.
 
 
 4
 In March, 1981, Cano v. Colbath, the class action, was set for trial. The plaintiff class contended that the City and its Police Chief had violated their civil rights in failing properly to train, supervise and discipline McAllen police officers. Wilson's assault upon Longoria was one of the incidents alleged to demonstrate the pattern and practice of McAllen police misconduct. Shortly after trial began, the proceedings were suspended when counsel[2] announced that they had reached a settlement agreement wherein the City and its insurer would each pay $125,000[3] without conceding liability. This agreement apparently was reached during the course of a weekend meeting of counsel at which the trial judge was not present.
 
 
 5
 In April, Pettitt forwarded a proposed final judgment, checks totaling $85,000, and release forms to Harrington, counsel for Longoria. One of the checks was made out to Longoria in the amount of $15,000. Harrington discovered that the releases and proposed judgment possibly covered not only a settlement of the class action, but also a settlement of Longoria's individual action. Believing such a settlement did not reflect the parties' agreement, Harrington--without the consent of Pettitt and indeed contrary to the condition set forth in the letter that accompanied the checks[4]--changed both documents to indicate a settlement of the class action only. These documents were later returned to Wilson's attorneys, although apparently the altered release form cannot be located. At a hearing on the motion for new trial in the Longoria case, the attorneys called the settlement dispute in all its particulars to the Court's attention. The Court was unable to resolve the matter with no written motion or documentation before it. The attorneys were ordered to confer and attempt to reach an agreement:
 
 
 6
 [T]hat's a matter you gentlemen had better talk over one more time.... If there is a genuine dispute, then what you [addressing Mr. Harrington] had better do forthwith is to return that money and the releases with a letter setting out what you thought the agreement was. Then if John [referring to Mr. Lewis] does not agree to that, we will just set these cases back on the active docket ... defense counsel can file a motion setting out their grounds.
 
 
 7
 Two days later, on June 5, 1981, Harrington sent a letter to Lewis expressing disbelief as to defense counsel's contentions at the hearing. Harrington explained that he had changed the names on the judgment and releases because he felt listing of the individual police officer defendants as well as the class action defendants was a clerical error. Harrington requested a reply within three days. A letter dated June 9, 1981, states that no such reply was received. On July 2, 1981, defense counsel filed a motion in the Longoria suit contending that the post-judgment compromise constituted a settlement of the individual actions including specifically Longoria's, and requesting a hearing on the issue. Two weeks later, the plaintiffs answered, simply denying the allegations of the motion. The response was accompanied by an affidavit from Harrington stating that the Home Insurance check for $15,000 made out to Longoria was in Harrington's possession but had not yet been negotiated. This controverted only Lewis' allegation that Longoria had already cashed the check. In September of 1981, with no response from Lewis and no action by the Court, Harrington, faced with the expiration of the six-month negotiability period of the insurer's draft, wrote to Lewis stating that Longoria would cash the check and hold the funds in a separate account pending resolution of the settlement dispute.
 
 
 8
 The final chapter of the trial portion of this saga closed on February 16, 1982, when the District Court summarily denied Wilson's motion for new trial. In its order of that date, without findings of fact, a hearing, or comment of any kind, the Court also denied Wilson's motion for a hearing on the settlement issue. Wilson filed a timely notice of appeal on March 15, 1982. Longoria has apparently retained the $15,000 from Home Insurance's portion of the settlement.
 
 
 9
 Who Settled What?
 
 
 10
 Wilson contends on appeal that the post-judgment settlement was a settlement of both Cano v. Colbath and Longoria v. Wilson. There is no dispute that Cano v. Colbath was settled--what is at issue here is whether the parties intended that settlement to be a compromise--partial or complete--of Longoria's individual action as well. The $30,000 damage award in Longoria v. Wilson is now a final judgment. We can only surmise that because it denied the motion for a hearing, the District Court must have concluded that the settlement was a compromise of only Cano v. Colbath. However, the Court's failure to hold a hearing, receive factual proof or otherwise state the basis for its conclusions leaves us with a record so incomplete that we cannot render effective appellate review.
 
 
 11
 Although Longoria repeatedly calls attention to the fact that defense counsel's correspondence concerning the settlement was referenced only to Cano v. Colbath, we cannot agree that this, coupled with the limited number of other undisputed facts, was a sufficient factual basis for the trial court to find as a matter of fact or as a matter of law that the settlement was limited solely to Cano v. Colbath. Additionally, it is still unclear exactly how much money Longoria received or was to receive in the Cano v. Colbath settlement. If he received only the $15,000 from Home Insurance one might logically reason that he never intended to settle Longoria v. Wilson, in which he already had obtained a judgment for $30,000. On the other hand, the record also clearly demonstrates that Harrington received $125,000 from the City of McAllen as trustee for his clients. We have nothing before us which explains where that money went and whether Longoria received any portion of it. Indeed, the only evidence before the trial court consisted of the parties' bare allegations in the form of the motion for hearing and response thereto, miscellaneous correspondence from which we can find no determinative facts, and one affidavit wherein Harrington attests to the fact that he had not cashed the check as of June 3, 1981.
 
 
 12
 We are also disturbed by the fact that, without explanation, the trial court apparently found in favor of Longoria in a factual dispute involving highly questionable conduct by Longoria's attorney. Harrington's retention of the $15,000 after unilaterally altering the release and proposed judgment that accompanied payment flew in the face of specific instructions from both the tenderer of the check, Home Insurance, and the trial judge himself.[5] While we consider the propriety of Harrington's unilateral actions to be dubious at best, it was for the trial court to impose sanctions as it saw fit. At this juncture, we review Harrington's actions, reprehensible as they may be, only insofar as they raise evidentiary issues pertaining to settlement that remain undecided.
 
 
 13
 At this point, because we are faced with insufficient fact development, we are unable to determine the merits of the legal arguments that the parties raise regarding settlement.[6] For example, whether or not Longoria's retention of the check made the disputed settlement final under Texas case law such as Tarrant Wholesale Drug Co. v. Kendall, 223 S.W.2d 964 (Tex.Civ.App.1949) and Groves v. Sawyer, 384 S.W.2d 193 (Tex.Civ.App.1964, writ ref'd n.r.e.) is irrelevant to the threshold fact question of which case or cases the parties intended to settle. We think consideration of this and the other legal issues is appropriately left to the District Court on remand.
 
 
 14
 We also leave for remand a further issue. Should the District Court find on remand that the parties' intent was to settle only Cano v. Colbath, we direct it to consider also whether any portion of Longoria's recovery in that case should be set off against the judgment in Longoria v. Wilson. Wilson argues on appeal that the Texas "one-satisfaction" rule, precluding more than one full compensation for damages arising from the same injury, is applicable to this case. See Bradshaw v. Baylor University, 126 Tex. 99, 84 S.W.2d 703, 705 (1935); McMillen v. Klingensmith, 467 S.W.2d 193, 196-97 (Tex.1971). The District Court may wish to consider the Sec. 1983 character of both suits in determining the applicability of this state law principle. The issue has been open in this Circuit since the panel opinion in Dobson v. Camden, 705 F.2d 759 (5th Cir.1983) was vacated[7] by our decision to consider the issue en banc. Because the en banc majority found that two separate injuries had been alleged against two separate sets of tortfeasors in Dobson, the issue of whether the policies of Sec. 1983 were in conflict with the Texas one-satisfaction rule never was reached. Dobson v. Camden, 725 F.2d 1003 (5th Cir.1984) (en banc ). In this case, however, there can be little doubt that only one physical injury was inflicted upon Longoria--the blow struck by former Officer Wilson.
 
 
 15
 We point out in disposing of this settlement problem that we are empathetic to the confusion that apparently confronted the District Court. At the hearing on the Motion for New Trial, the Judge stated, "I would hate for a case to go up on appeal if there was an evidentiary issue for me to decide on settlement." Unfortunately, what he feared has now come to pass.
 
 The Texas Dead Man's Statute
 
 16
 Wilson asserts that the trial court erred in allowing Mr. and Mrs. Longoria to testify regarding their deceased son's medical and emotional problems following the incident giving rise to this lawsuit in violation of the Texas Dead Man's Statute, Tex.Civ.Code Ann. art. 3716 (Vernon 1926). Although it is true that under F.R.Evid. 601 the competency of a witness is to be "determined in accordance with State law," that rule is limited to cases where "State law supplies the rule of decision," or diversity cases. Id.
 
 
 17
 This case, however, is a federal question-based civil rights inquiry under Sec. 1983. It therefore presents a "compelling federal interest for refusing to apply state policy or procedure." See Notes of Committee on the Judiciary, House Report No. 93-650, accompanying F.R.Evid. 601. Under these principles, we find no error arising from the introduction of the Longorias' testimony.[8]
 
 Violation of the Order In Limine
 
 18
 Prior to trial, the District Court entered an Order in Limine prohibiting the plaintiff from exploring specific acts of excessive force and improper conduct by Wilson that were unrelated to the Longoria incident. The Order specifically prohibited testimony regarding previous lawsuits against Wilson and misconduct on the part of Wilson that led to his resignation from the Hidalgo County Sheriff's Department. At trial, however, objections were sustained when Harrington asked the following questions:
 
 
 19
 1. "Are you familiar with his [Wilson's] reputation as a police officer?"
 
 
 20
 2. "Did Mr. Wilson have a reputation at the police department for using excessive force?"
 
 
 21
 3. "Are you aware of any specific instances of misconduct in which Mr. Wilson may have been engaged while a policeman?"
 
 
 22
 After excusing the jury, the Court instructed Mr. Harrington that the preceding questions violated the Order in Limine, and warned that a mistrial would be declared if any further questions of that nature were asked.
 
 
 23
 Wilson argues that the questions were suggestive of answers that would have prejudiced his case. The transcript discloses that although Lewis' objections were sustained before the questions were answered, the Court failed to instruct the jurors to disregard the questions.
 
 
 24
 We reverse on evidentiary grounds only where a "substantial right" of a party is affected and where a timely objection is raised. F.R.Evid. 103(a). We find that in light of the other evidence of excessive force adduced against Wilson, any error was harmless. In any event, no objection was raised to the failure to provide such an instruction, either during trial or following the Court's charge to the jury. A party is required to bring to the trial court's attention alleged errors in the conduct of the trial and must object to errors in the court's charge before the jury retires. See Jenkins v. General Motors Corp., 446 F.2d 377, 383 (5th Cir.1971). See also F.R.Civ.P. 46 and R. 51.
 
 Punitive Damages
 
 25
 Finally, we cannot conclude that the jury's award of punitive damages was unjustified under the circumstances of this case. Punitive damages may be awarded in Sec. 1983 cases to deter or punish certain intentional violations of constitutional rights. Carey v. Piphus, 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049, 55 L.Ed.2d 252, 260-61 (1978); Shillingford v. Holmes, 634 F.2d 263, 266 (5th Cir.1981). In Smith v. Wade, the Supreme Court held that "reckless or callous disregard for the plaintiff's [constitutional] rights, as well as intentional violations of federal law, should be sufficient to trigger a jury's consideration of the appropriateness of punitive damages." Id., --- U.S. ----, ----, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632, 648 (1983). We find that the Court instructed the jury in accordance with this standard.[9]
 
 
 26
 It has long been the law of this Circuit that the award of punitive damages is within the discretion of the trier of fact. Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir.1970). The Longoria jury had before it facts indicating that Wilson was six inches taller than 15-year old Longoria and outweighed him by 60 pounds. The injury giving rise to the lawsuit was a forceful blow to the face that knocked Longoria into a brick wall, breaking his tooth and lacerating the inside of his cheek. We find that the properly instructed jury could reasonably have found that Wilson's use of excessive force justified the award of punitive damages under these facts.
 
 Conclusion
 
 27
 Accordingly, we vacate and remand this case for an appropriate hearing, the receipt of acceptable evidence and a determination of the issues with respect to the settlement claim. This will include making findings of fact and conclusions of law. In all other respects, we affirm the judgment below.
 
 
 28
 AFFIRMED IN PART and REMANDED.
 
 
 
 [1]
 Eddie Longoria died in an unrelated automobile accident during the pendency of this case. His interests are represented by his father, Elias Longoria. All further references to "Longoria" or "appellant" refer to the interests of Eddie Longoria as represented by his father
 
 
 [2]
 Jones, Lewis & Pettitt (specifically B. Buck Pettitt and John E. Lewis) represented Home Insurance Co., the City's insurer, in the class action. Lewis and Pettitt also represented former Officer Wilson along with some of the other police officers in the severed individual claims. James Harrington of the American Civil Liberties Union represented Longoria and some of the other plaintiffs in both the class action and their individual suits
 
 
 [3]
 It is apparently still in dispute whether Longoria ever received any portion of the $125,000 paid to James Harrington as trustee for the plaintiff class
 
 
 [4]
 In the letter accompanying the check, Mr. Pettitt stated "I will appreciate it, if you will please not negotiate the checks until the Final Judgment has been approved and entered and the Releases have been properly signed and returned to me."
 
 
 [5]
 Pettitt's instructions appear at note 4, supra. Additionally, at the June 3 hearing on the motion for new trial, the Judge instructed Harrington on two occasions to return the check if the nature or kind of settlement was disputed:
 If there has not been a meeting of the minds, I think it's obvious you are going to have to return those drafts....
 * * *
 If there is a genuine dispute, then what you had better do forthwith is return that money and the releases with a letter setting out what you thought the agreement was.
 
 
 [6]
 Indeed, such determinations would be premature because on remand, the District Court, after receipt of appropriate evidence, may find that both cases were settled. Alternatively, it may find that only Cano v. Colbath was settled, and must then reach the legal arguments raised by the defendants
 
 
 [7]
 The "effect of granting a rehearing en banc is to vacate the panel opinion and judgment of the Court...." Fifth Circuit Local Rule 41.3
 
 
 [8]
 Finding that the state statute simply does not apply in federal actions of this nature, we need not reach issues such as whether the testimony concerned a "transaction" with the deceased in contravention of the statute or whether the presence of Eddie's deposition in the record precluded application of the statute
 
 
 [9]
 The Judge told the jury:
 But before you can find punitive damages, you must find by a preponderance of the evidence that the officer not only acted in an illegal manner, but that he acted in a malicious and oppressive way, that his conduct was prompted by ill will or spite or grudge, and that he did this with extraordinary harshness or severity.