**Glenn R. SCHULTZ, Plaintiff,**

v.

**Daniel THOMAS, individually and as a police officer, Racine, Wisconsin, et al., Defendants.**

**No. 84-C-1415.**

United States District Court, E.D. Wisconsin.

Dec. 8, 1986.

Steven M. Lucareli, Racine, Wis., for plaintiff.

Daniel P. Wright, Office of City Atty., Racine, Wis., for defendants.

### DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

This action was brought pursuant to 42 U.S.C. § 1983. On July 14, 1986, the case went to jury trial on the plaintiff's claims that the defendant police officers, Daniel Thomas and Carl Pavilonis, had violated his constitutional rights by arresting him without probable cause and using excessive force at that time. On July 18, 1986, the jury found for the plaintiff, assessing $250 in compensatory damages and $80,000 in punitive damages against each defendant. Judgment was entered accordingly. The

matter is now before me on the defendants' motion for a new trial, pursuant to Rule 59(a), Federal Rules of Civil Procedure, or, in the alternative, for remittitur of the punitive damages awards and on the plaintiff's motion for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

The relevant event in this case occurred sometime after midnight on the morning of November 14, 1981. Viewing the evidence presented at trial in the light most favorable to the plaintiff, the jury was justified in finding that on November 14, 1981, the defendants provoked the plaintiff into committing a breach of the peace, arrested him for disorderly conduct without probable cause, and used excessive force to effect his arrest. Probative evidence was also presented that the defendants had testified falsely under oath in state court before a Racine County Circuit Judge (Judge Flynn) in the plaintiff's disorderly conduct prosecution. Judge Flynn ordered the disorderly conduct charge against the plaintiff dismissed following a bench trial on March 24, 1982.

## I. DEFENDANTS' MOTION FOR NEW TRIAL OR REMITTITUR

In their motion for a new trial, the defendants first allege that I committed prejudicial error by allowing Judge Flynn to testify and by receiving into evidence the official transcript of his oral decision acquitting the plaintiff of disorderly conduct. However, I continue to believe "that there is a sufficient similarity of issues and parties between this action and the state court proceeding to permit the evidence to qualify as relevant." *See* my decision and order of July 11, 1986, denying the defendants' motion in limine, at p. 5. Moreover, although there is no doubt that Judge Flynn's findings and observations as set forth in his decision reflected negatively on the defendants and severely damaged their credibility at trial, "Rule 403 [of the Federal Rules of Evidence] was never intended to exclude relevant evidence simply because it is determental to one party's

case...." *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir.1986). The defendants have not shown that the prejudice they suffered from the admission of Judge Flynn's testimony and prior findings was the type of unfair prejudice that Rule 403 was designed to prevent or that the danger of such prejudice "substantially outweighed" the probative value of the evidence.

The official transcript of Judge Flynn's decision was further admissible under Rule 803(8)(B), Federal Rules of Evidence, which provides, in substance, that the "statements ... in any form, of public offices or agencies, setting forth (A) ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ..." are not excluded by the hearsay rule, even though the declarant is available as a witness. As the holder of a public office, Judge Flynn had a duty to observe the testimony and demeanor of witnesses in his courtroom and to report his findings based on an evaluation of that testimony. Admission of the transcript was therefore appropriate under this hearsay exception once plaintiff's counsel established a proper foundation for its introduction and Judge Flynn confirmed its authenticity. *Cf. Major v. Treen*, 574 F.Supp. 325, 330, n. 6 (E.D.La.1983).

■ The defendants request a new trial on the ground that my failure to give a good-faith immunity instruction to the jury was prejudicial. Good-faith immunity, otherwise known as qualified immunity, is available to police officers as a shield from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2812, 86 L.Ed.2d 411 (1985).

■ There are two primary reasons for my unwillingness to have given immunity instructions to the jury in this case. First, the court of appeals for the seventh circuit has interpreted *Harlow* to hold "that the good faith or qualified immunity of a civil

rights defendant is not an issue for the jury ... where the police are charged with having acted without probable cause." *Llaguno v. Mingey*, 763 F.2d 1560, 1569 (7th Cir.1985), *cert. dismissed*, —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986). The court in *Llaguno* held that to instruct the jury that "even if police acted without probable cause they should be exonerated if they reasonably ... believed that they were acting reasonably is to confuse the jury and give the defendants two bites at the apple." *Id.*

Second, at the time of the plaintiff's arrest in this case, the law was clear that "a police officer cannot provoke a person into a breach of the peace, such as directing abusive language to the police officer, and then arrest him without a warrant." *Lane v. Collins*, 29 Wis.2d 66, 72, 138 N.W.2d 264 (1965). If under *Lane* police could not arrest without a warrant, it follows a fortiorari that they could not arrest without a warrant using force, much less the unreasonable degree of force used in this case. Moreover, following the reasoning of the court in *Llaguno*, 763 F.2d at 1569, to instruct the jury that even if police used greater force than was reasonably necessary under all the circumstances, they should be exonerated if they reasonably believed that they were acting reasonably "is to confuse the jury and give the defendants two bites at the apple."

The defendants' third contention is that I improperly instructed the jury that a police officer may arrest a person without a warrant whenever he observes a "serious offense" being committed. The defendants object to the use of the word "serious" to describe the type of offense that triggers the right to arrest without a warrant. This contention is without merit.

"The instructions must be evaluated as a whole, in a common sense manner, avoiding fastidiousness, inquiring whether the correct message was conveyed to the jury reasonably well." *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 597 (7th Cir.1985). In addition to the disputed portion of the probable cause instruction, I instructed that when police provoke citizens into a breach of the peace, there can be no probable cause. The defendants acquiesced in this portion of the instruction, lodging no objection thereto, and there was ample evidence from which the jury might reasonably have concluded that the plaintiff was first provoked and then arrested. The jury was also instructed that the burden was on the plaintiff to show by a preponderance of the evidence that the defendants arrested him without probable cause. "[G]iven the flexible quality of probable cause," *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 438 (7th Cir. 1986), I do not believe that the instruction given here, when evaluated as a whole, conveyed an incorrect message to the jury. *Simmons, Inc., supra*, 762 F.2d at 597–98.

The defendants next assert that the court abused its discretion in allowing the question of excessive force to go to the jury. In *Gumz v. Morrissette*, 772 F.2d 1395, 1400 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986), the court of appeals held that severe injuries are a condition for recovery in the context of an excessive force claim under § 1983. In the case at bar, the plaintiff did not receive major physical injuries as a result of the defendants' conduct. However, the court in *Gumz* also held that while "the presence of some physical injury is certainly relevant to the question of severity, [c]ircumstances involving actions of state officials maliciously designed to evoke an extreme emotional response from an individual could violate Fourteenth Amendment due process guarantees (even if the emotional distress suffered by the individual does not result in any observable physical symptoms)." 772 F.2d at 1401–1402; *but see Raley v. Fraser*, 747 F.2d 287, 289 (5th Cir.1984).

Credible evidence was presented at trial that in addition to receiving a bump on his head, a bruise on one arm, and skin irritation around his wrists where he was handcuffed, the plaintiff experienced headaches, nightmares, fear, stress, and anxiety in the days and weeks after his arrest. There

was also substantial evidence before the jury that the defendants' actions were inspired by malice, rather than carelessness or excessive zeal: Both defendants swore obscenities at and threatened the plaintiff. The injuries suffered by the plaintiff thus were sufficiently severe under *Gumz* to create a jury issue on the plaintiff's excessive force claim. The defendants do not dispute any aspect of the court's instructions to the jury on this claim.

■ The defendants' final contention is that the punitive damages awarded by the jury are so excessive that the court should order either a new trial or the filing of a substantial remittitur. The jury awarded the plaintiff $250 in compensatory damages and $80,000 in punitive damages against each defendant. Although a substantial punitive damage award is appropriate in this case, I believe that the amount awarded by the jury constitutes a windfall and exceeds what is reasonably necessary to fulfill the dual purpose of punitive damages, i.e., to punish the defendants and deter them and others like them from engaging in similar conduct in the future. *See Smith v. Wade*, 461 U.S. 30, 54, 103 S.Ct. 1625, 1639, 75 L.Ed.2d 632 (1983). Accordingly, a remittitur is appropriate and will be ordered.

In *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), the jury returned a punitive damage award of $350,000 against defendant Edwin Shaffer. Mr. Shaffer was a detective with the Milwaukee Police Department at the time that Daniel Bell was shot and killed. Mr. Shaffer was found to have participated with two other police officers in a conspiracy to cover up the facts surrounding Mr. Bell's death. On appeal, the court reduced the jury's punitive damage award against Mr. Shaffer from $350,000 to $50,000. Despite his knowing role in the concealment of facts bearing on the tragic death of an innocent man, the court found that the evidence did not "justify fully the sizeable punitive damage award against Shaffer ... [P]unitive damages should not go beyond deterrence and become a windfall.'" *Bell, supra*, 746

F.2d at 1267; *see also Yarbrough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 514 (7th Cir.1986), holding that an award of punitive damages may not constitute a windfall for the plaintiff.

A comparison of the case at bar with several other recent excessive force cases under § 1983 further demonstrates the need to reduce the jury's punitive damage awards. In *Gordon v. Norman*, 788 F.2d 1194, 1199–1200 (6th Cir.1986), the jury's award of $45,000 in punitive damages against each of two police officers who struck the plaintiff in the head with billy-clubs was reduced by the trial court to $17,500 each and, as reduced, affirmed. In *Hinshaw v. Doffer*, 785 F.2d 1260, 1269–70 (5th Cir.1986), a jury award of $2,000 in punitive damages against each of two police officers was affirmed. The evidence in this case showed that one of the officers "repeatedly stomped on the plaintiff's head" while others present held him down.

In *Lewis v. Downs*, 774 F.2d 711, 712–15 (6th Cir.1985), the court upheld a jury's award of $7,000 in punitive damages against one police officer and $5,000 against another for kicking the plaintiff while she lay handcuffed on the ground and unnecessarily striking her husband and son with a night stick about the head and mouth. In *Taliferro v. Augle*, 757 F.2d 157, 159, 162 (7th Cir.1985), the court upheld a jury's $12,500 punitive damage award against each of two City of Chicago police officers who inflicted serious bodily injury against the plaintiff, including destroying his dental plate and knocking out many of his real teeth. Finally, in *Longoria by Longoria v. Wilson*, 730 F.2d 300, 305–306 (5th Cir.1984), the court upheld a jury's $15,000 punitive damage award against a police officer who delivered a forceful blow to the plaintiff, knocking him into a brick wall, breaking his tooth and lacerating the inside of his cheek.

This does not mean that punitive damages should be proportioned to compensatory damages. The disproportionality of a large punitive damages award to nominal compensatory damages does not, by itself,

mandate a remittitur. *Robison v. Lescrenier*, 721 F.2d 1101, 1113 (7th Cir.1983) (applying Wisconsin law). However, where, as here, the jury returns a punitive damage award "which is more than necessary to serve its purposes (punishment and deterrence) or which inflicts a penalty or burden on the defendant which is disproportionate to the wrongdoing [, the award] is excessive and is contrary to public policy." *Fahrenberg v. Tengel*, 96 Wis.2d 211, 234, 291 N.W.2d 516 (1980); *cf. Smith, supra*, 461 U.S. at 54, 103 S.Ct. at 1639.

The evidence presented to the jury showed that Officer Thomas pulled his service revolver and pointed it toward the plaintiff for approximately thirty seconds without justification before returning it to his holster. He verbally taunted the plaintiff, swore obscenities at him, threatened him, and otherwise treated him without common decency. Officer Pavilonis shoved the plaintiff and, later, grabbed him by the arm, twisted it up behind his back, held him by the hair, and twice pushed the plaintiff's head down onto the roof of a squad car, leaving the plaintiff with a bump and bruise that according to the plaintiff's testimony healed within a week or two. The defendants then sought to sanitize their misconduct by arresting the plaintiff and testifying falsely against him under oath before Judge Flynn.

The jury, perhaps reacting passionately to the combination of flagrant violations of the plaintiff's constitution rights and the defendants' attempts to conceal them, returned a total punitive damage award of $160,000. However, "[t]he evidence presented [at trial] is simply insufficient to sustain the full amount assessed...." *Bell, supra*, 746 F.2d at 1267; *see also Gordon, Hinshaw, Lewis, Taliferro*, and *Longoria by Longoria, supra*. A total punitive damage award of $80,000, consisting of $40,000 against each defendant, will fulfill the punitive damage policies of punishment and deterrence. The amounts awarded by the jury, would, in my opinion, constitute a windfall to the plaintiff and inflict a penalty or burden on the defendants which is disproportionate to their wrongdoing, excessive, and contrary to public policy. Each defendant perpetrated flagrant wrongs upon the plaintiff, and the imposition upon each of them of punitive damages in the sum of $40,000 should amply accomplish the goals of this type of penalty.

Finally, *Bell* and *Gordon* make it clear that the district court may order the filing of a remittitur of punitive damages without offering the plaintiff the alternative of going forward with a new trial on this issue.

## II. PLAINTIFF'S MOTION FOR COSTS AND PETITION FOR ATTORNEYS' FEES

The plaintiff has submitted a motion for costs and petition for attorneys' fees pursuant to 42 U.S.C. § 1988. He seeks a total of $45,426.50 in attorneys' fees, 275.2 hours at $70.00 per hour (Attorney Lucareli) and 209.3 hours at $125.00 per hour (Attorney Whitnall). The plaintiff has also submitted a modified bill of costs in the amount of $438.72. *See* plaintiff's reply brief at Exhibit "C".

As the prevailing party in this litigation, the plaintiff is statutorily entitled to a reasonable attorneys' fee as part of his costs. 42 U.S.C. § 1988. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "This figure, commonly referred to as the 'lodestar', is presumed to be the reasonable fee contemplated by § 1988." *City of Riverside v. Rivera*, — U.S. —, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466 (1986).

Although all of their fees are not compensable in this court, counsel for the plaintiff have submitted adequate evidence to support the number of hours of work claimed. A review of their time sheets demonstrates that counsel seek compensation for hours that would properly be billable to their client in ordinary litigation. Hence, unless otherwise excludable, the

hours of work claimed in the plaintiff's petition are deemed to be reasonable under § 1988. *Hensley, supra,* 461 U.S. at 434, 103 S.Ct. at 1939.

The congressional intent to limit awards to prevailing parties requires that unsuccessful claims unrelated by a common core of facts to claims on which relief was awarded be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded on such unsuccessful claims. *Id.* at 435, 103 S.Ct. at 1940; *see also Zabkowicz v. West Bend Co., Div. Dart Industries,* 789 F.2d 540, 553 (7th Cir.1986). In the case at bar, the defendants obtained summary judgment three months before trial commenced dismissing three of the five claims set forth in the plaintiff's amended complaint, as well as a claim of municipal liability against the City of Racine. The substantive claims dismissed, two bail related claims and one conspiracy claim, "do not share the requisite common core of facts" with the unlawful arrest and excessive force claims on which the plaintiff obtained relief. Therefore, no fee may be awarded on these claims.

I believe that a fee award compensating each of plaintiff's counsel for 200 hours of work is reasonable in the context of this case. This reduction from counsels' claims of 275.2 hours for Mr. Lucareli and 209.3 hours for Mr. Whitnall represents time expended in prosecuting unsuccessful claims for which no fee may be awarded under § 1988, *Hensley* and *Zabkowicz.*

With respect to counsels' hourly rates of compensation, I believe that the evidence submitted supports Attorney Lucareli's claim of $70 per hour. Attorney Lucareli's own affidavit, the affidavit of Attorney Paulson, and the essay concerning lawyer income attached to the plaintiff's reply brief, establish the reasonableness of the $70 per hour request. However, there is inadequate proof to support Attorney Whitnall's claimed rate of $125 per hour. The affidavits submitted on this point are directly in conflict. I believe that a reduction of Attorney Whitnall's request to $100 per

hour properly reflects the market rate for legal services prevailing in Racine as to one with Mr. Whitnall's experience.

■ Applying the foregoing analysis, I calculate the lodestar amount of attorneys' fees in this case to be $34,000. This includes $14,000 representing 200 hours of work at $70 per hour performed by Attorney Lucareli, and $20,000 representing 200 hours of work at $100 per hour performed by Attorney Whitnall. Defense Counsel's objections notwithstanding, no reduction or downward adjustment of the lodestar is appropriate in this case. The plaintiff obtained excellent results at trial in the form of substantial punitive damage awards against two police officers, and he is therefore entitled to a fully compensatory fee. *Hensley, supra,* 461 U.S. at 435, 103 S.Ct. at 1940. The defendants have failed to overcome the presumption that the lodestar constitutes the reasonable fee within the meaning of § 1988. *See City of Riverside, supra,* 106 S.Ct. at 2691; *Pennsylvania v. Delaware Valley Citizens' Counsel, —— U.S. ——,* 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986); *see also In Re: Burlington Northern, Inc.—Employment Practices Litigation,* 803 F.2d 279, 284–85 (7th Cir. 1986).

The plaintiff's modified bill of costs at Exhibit "C" attached to his reply brief is reasonable and will be approved in full pursuant to § 1988. *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984).

Therefore, IT IS ORDERED that the defendants' motion for a new trial be and hereby is denied.

IT IS ALSO ORDERED that the defendants' motion for remittitur be and hereby is granted and that the jury's punitive damage award shall be remitted to $40,000 against defendant Daniel Thomas and $40,-000 against defendant Carl Pavilonis.

IT IS FURTHER ORDERED that Glenn R. Schultz is entitled to judgment against the defendants in the sum of $34,000 as attorneys' fees pursuant to 42 U.S.C. § 1988.

IT IS FURTHER ORDERED that Glenn R. Schultz is entitled to judgment against the defendants in the sum of $438.72 as costs pursuant to 42 U.S.C. § 1988.

IT IS FURTHER ORDERED that the judgment heretofore entered in this case on July 18, 1986, be modified to incorporate the mandate of this order.