Matthus M. WEST

v.

**PELICAN MANAGEMENT SERVICES CORP.**

Civ. A. No. 91–0363–A.

United States District Court, M.D. Louisiana.

March 31, 1992.

Lisa Degruy, Covington, La., for plaintiff, Matthus West.

H. Sloan McCloskey, New Orleans, La., for defendant, Pelican Management Services Corp.

## RULING

NOLAND, United States Magistrate Judge.

This matter comes before the Court on the plaintiff's motion for reconsideration of the Court's prior order denying a jury trial on the plaintiff's sex discrimination claim and on his alternative request that the Court recertify the order for interlocutory appeal under 28 U.S.C. § 1292(b).

Upon reconsideration, the Court adheres to its prior ruling on the jury trial issue. In this regard, the Court finds that the plaintiff's reliance on the panel decision in *Ayers v. Allain*, 893 F.2d 732 (5th Cir.

1990), is misplaced. The plaintiff suggests that the Fifth Circuit, sitting *en banc,* vacated the panel decision "on other grounds," apparently implying that conclusions in the panel opinion that were not specifically rejected by the *en banc* court remain good law in the Fifth Circuit. *See Ayers v. Allain,* 914 F.2d 676 (5th Cir.1990) (*en banc* ), *cert. granted,* ─ U.S. ─, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991). Yet the mere grant of rehearing *en banc,* without more, vacates the panel opinion. *E.g., Byrne v. Butler,* 845 F.2d 501, 506–07 (5th Cir.), *cert. denied,* 487 U.S. 1242, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988). Thus, the grant of rehearing *en banc* deprives the panel opinion of controlling precedential value unless the *en banc* court specifically adopts or reinstates portions of the panel opinion. *E.g., Equilease Corp. v. M/V Sampson,* 793 F.2d 598, 599–600 n. 1 (5th Cir.), *cert. denied,* 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986); *Longoria v. Wilson,* 730 F.2d 300, 304 n. 7 (5th Cir. 1984). In *Ayers v. Allain,* the panel decision—which *reversed* the district court decision—was not adopted to any extent by the *en banc* court—which *affirmed* the district court decision. The *Ayers v. Allain* panel decision therefore is not controlling law in this Circuit.

■ In any event, even if the *Ayers v. Allain* panel decision were good law, the Court does not find that portion relied upon by the plaintiff would be apposite herein. The plaintiff relies upon the panel decision for the proposition that "[r]etroactive application of a statute is appropriate when Congress enacts the statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture." *Ayers v. Allain,* 893 F.2d at 754–55. However, the amendments in the Civil Rights Act of 1991 that allowed for the recovery of compensatory and punitive damages and for a right to a jury trial in Title VII cases do not at all constitute subsequent legislation enacted by Congress to declare its intent as to how the earlier statutory law should have been interpreted.

The prior statutory law quite clearly did not provide for damages and jury trials in Title VII cases.[1] Rather than reflecting an attempt to clarify prior Congressional intent, the amendments in question constituted a fundamental change in the Title VII statutory scheme. The principle that the plaintiff seeks to distill from the *Ayers v. Allain* panel decision therefore does not apply in this context.

The Court does find cause, however, *sua sponte,* to modify its reasoning on the jury trial issue. Subsequent to this Court's February 4, 1992 ruling on the plaintiff's motion for a jury trial, this Court has learned, through additional independent research, of additional legislative history bearing on the question of legislative intent. This additional legislative history does not change the Court's ultimate conclusion on the jury trial issue, but it does alter the Court's reasoning somewhat.

In its February 4, 1992 Ruling, the Court relied in part on the fact that three prior attempts had been made to pass expressly retroactive legislation and that all three of these attempts had failed. *See Ruling,* at 12–13; *Rec.,* at 158–59. The Court reasoned that because there were insufficient votes to pass (or to override a presidential veto of) expressly retroactive legislation, the statute that was passed necessarily must have been of only prospective effect. *Id.* Through its subsequent independent research, however, the Court has learned that unsuccessful attempts also were made to pass legislation that had expressly prospective effect.

When the legislation leading to the vetoed Civil Rights Act of 1990 was on the floor of the House, Representatives Robert H. Michel and John LaFalce offered a substitute that, *inter alia,* expressly provided that "[t]he amendments made by this Act shall not apply with respect to claims arising before the date of enactment of this Act." 136 Cong.Rec. H6746–01 (daily ed. Aug. 3, 1990). This Michel–LaFalce substi-

---

1. *E.g., Bennett v. Corroon & Black Corp.,* 845 F.2d 104, 106 (5th Cir.1988), *cert. denied,* 489 U.S. 1020, 109 S.Ct. 1140, 103 L.Ed.2d 201 (1989) (no compensatory damages); *Blum v. Gulf Oil Corp.,* 597 F.2d 936, 938 (5th Cir.1979) (no jury trial).

tute was not adopted. Then, in early 1991, the civil rights bill proposed by the Administration similarly provided that "[t]he amendments made by this Act shall not apply to any claim arising before the effective date of this Act." Representative Michel sought to have this language included in the final legislation, but this effort also did not meet with any success. *See* 137 Cong.Rec. H3876–03 (daily ed. June 4, 1991).

 It therefore would appear that, while it remains true that efforts to pass expressly retroactive legislation failed, it is perhaps equally true that efforts to pass expressly prospective legislation failed to meet with success. The Court still believes that, on balance, the intent of the Congress and the President in enacting the Civil Rights Act of 1991 was to enact a law having only prospective effect. However, at bottom, this issue cannot be conclusively resolved one way or the other by resort to legislative history. Resolution of the issue ultimately will turn on the rule of statutory construction applied. If the *Bradley* [2] rule governs, then the statute may well apply retroactively. If, on the other hand, the *Bowen* [3] rule governs, then the statute will apply only prospectively. This Court, con-

sistent with its earlier Ruling, continues to be of the view that the *Bowen* case governs and that the statute therefore must be construed to have only prospective effect in this context. *See Ruling*, at 4–10; *Rec.*, at 150–56.[4] The Court sees no reason to depart from this prior independent and alternative holding in support of its prior ruling on the jury trial issue.

## CONCLUSION

Accordingly, the Court adheres to its prior ruling in this matter on the plaintiff's motion for a jury trial and DENIES the plaintiff's motion for reconsideration of that ruling. On the plaintiff's alternative request for relief, the plaintiff's request for recertification of the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is GRANTED.

2. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (a court should apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary).

3. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (congressional enactments will not be construed to have retroactive effect unless their language requires this result).

4. This Court distinguished *Bradley* in part because, in *Bradley,* the legislative history reflected that an earlier version of the legislation included language limiting the statute to only prospective effect and that language was not carried forward into the final version of the bill that became law. This legislative history supported an inference that Congress thus intended for the statute to have retroactive effect. It appeared at the time of this Court's Ruling that exactly the opposite inference obtained in the instant case, due to the failed efforts to pass expressly retroactive legislation. This opposite inference now appears to have been cancelled

out by the additional legislative history referred to in the text herein. However, *Bradley* continues to be distinguishable. In *Bradley,* the legislative history did in fact allow an inference of retroactive intent to be drawn from the failure to adopt proposed language expressly limiting the statute to only prospective effect. In this case, however, the legislative history does not allow an inference of *either* retroactive intent *or* prospective intent to be drawn from the versions of the bills that were rejected, because proposed legislation on both sides of the issue was rejected. Thus, at bottom, the legislative history in *Bradley* allowed an inference of retroactive intent that is not similarly available in the instant case. This feature perhaps limits the reach of the *Bradley* decision, particularly in light of the *Bradley* Court's acknowledgement that it did *not* purport to hold that courts must always apply new laws to pending cases in the absence of clear legislative direction to the contrary. *See* 416 U.S. at 715, 94 S.Ct. at 2018. In any event, the need for a clear rule of statutory interpretation—and for a pronouncement from a court able to authoritatively resolve the jury trial issue raised in this case—is quite evident, as there is substantial ground for difference of opinion in this matter.