RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0315p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

NIKOS KIDIS,

*Plaintiff-Appellee*,

*v.*

No. 19-1673

JEAN REID; JOHN MORAN,

*Defendants-Appellants*.

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13070—Sean F. Cox, District Judge.

Argued: April 29, 2020

Decided and Filed: September 25, 2020

Before: BOGGS, GRIFFIN, and READLER, Circuit Judges.

───────────────

#### COUNSEL

**ARGUED:** Raechel M. Badalamenti, KIRK, HUTH, LANGE & BADALAMENTI, PLC, Clinton Township, Michigan, for Appellants. Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellee. **ON BRIEF:** Raechel M. Badalamenti, KIRK, HUTH, LANGE & BADALAMENTI, PLC, Clinton Township, Michigan, for Appellants. Shawn C. Cabot, CHRISTOPHER TRAINOR & ASSOCIATES, White Lake, Michigan, for Appellee.

READLER, J., delivered the opinion of the court in which BOGGS, J., joined, and GRIFFIN, J., joined in part. GRIFFIN, J. (pp. 17–22), delivered a separate opinion concurring in part and dissenting in part.

—————————

**OPINION**

—————————

CHAD A. READLER, Circuit Judge.   A jury found that Officer John Moran used excessive force in arresting Nikos Kidis, in violation of 42 U.S.C. § 1983.   The jury's conclusions regarding harm and compensatory damages, however, were difficult to square with its conclusion on punitive damages.   On the one hand, the jury found that Moran's conduct did not injure Kidis, and accordingly awarded Kidis $1 in nominal compensatory damages.   But on the other, the jury found Moran's actions so unjustified as to warrant $200,000 in punitive damages.   When measured against the jury's harm and compensatory damage findings, the punitive damages award runs afoul of the due process principles articulated in *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).   We accordingly reverse the punitive damages portion of the judgment, and remand that portion of the judgment to the district court with instructions to enter an order of remittitur reducing the punitive damages award to no more than $50,000.   We affirm the remaining aspects of the judgment.

**BACKGROUND**

After a day of heavy drinking at a Labor Day festival, Nikos Kidis drove himself and a friend home from the festivities.   Along the way, Kidis sideswiped another vehicle, causing a minor accident.   Nervous from the incident, Kidis exited his vehicle and fled.   He then encountered Officer Jean Reid.   When she attempted to arrest Kidis, he again became nervous and fled, this time with a handcuff attached to his right hand.   He proceeded to run through a parking structure and jump multiple barbed-wire fences before entering a wooded area.

Eventually, Kidis gave up fleeing the police.   He surrendered, lying face down on the ground, his hands stretched out above his head.   Despite his attempt to surrender, Kidis asserts that Officer John Moran, upon arriving at the scene, thrust his knee into Kidis and started to choke him.   Kidis further claims that although he offered no resistance, Moran continued to punch and strangle Kidis, yelling that he was going to "teach [him] to . . . run."

Kidis was charged and pleaded guilty to resisting and obstructing a police officer, operating a motor vehicle with a high blood-alcohol content, and failing to stop at the scene of an accident. Following his plea, Kidis filed a § 1983 action against Reid and Moran. Kidis alleged that the officers violated his Fourth Amendment right to be free from unreasonable search and seizure by employing excessive force against him during the arrest and exhibiting deliberate indifference to his medical needs.

At the close of discovery, the district court granted in part Defendants' motion for summary judgment. With respect to Kidis's deliberate indifference claim, the district court found that Kidis could not prove that either officer was actually aware of Kidis's medical needs, meaning Kidis could not satisfy the subjective element of a deliberate indifference claim. The district court likewise rejected Kidis's excessive force claim against Reid due to the absence of evidence that she was present or involved in the arrest that served as the basis for Kidis's excessive force claim. But the district court denied summary judgment as to Kidis's excessive force claim against Moran, concluding that a reasonable jury could find that Moran engaged in excessive force.

At trial, that possibility came to pass. The jury found that Moran used excessive force against Kidis. Yet the jury also found that Kidis did not prove that this excessive force caused his injuries, and therefore awarded Kidis $1 in nominal compensatory damages. Somewhat puzzlingly, the jury then proceeded to find that Kidis was entitled to $200,000 in punitive damages.

A series of post-trial motions ensued. In the first of those, Moran sought to alter or amend the judgment or, alternatively, to obtain a remittitur or a new trial on the grounds that Kidis had not established as a matter of law that Moran violated a clearly established constitutional right, and that even if he had, the jury's punitive damages award was so disproportionate to the compensatory damages that it amounted to a violation of Moran's due process rights. The district court denied the motion. It held that Moran could not re-litigate the qualified immunity issue that he had lost on summary judgment and, separately, that the punitive damages award was constitutional when measured against the standards adopted in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575–85 (1996), and *State Farm*, 538 U.S. at 416.

Having prevailed on all claims at summary judgment, Reid filed a motion for attorney's fees against Kidis pursuant to 42 U.S.C. § 1988, and a similar motion for fees against Kidis's counsel pursuant to 28 U.S.C. § 1927. The district court rejected the motions. Reid's § 1988 motion failed, the district court concluded, because Kidis's claims against Reid were not sufficiently frivolous or unreasonable to warrant a fee award. And Reid's § 1927 motion failed because Kidis's counsel did not unreasonably and vexatiously multiply the litigation.

Kidis, for his part, filed a motion seeking attorney's fees and costs from Defendants in accordance with § 1988. Agreeing that Kidis was the prevailing party in his § 1983 action, the district court awarded Kidis $143,787.97 in fees and costs. Defendants timely appealed.

**ANALYSIS**

*Punitive damages.* Following its award of $1 in compensatory damages, the jury awarded Kidis $200,000 in punitive damages. Despite a tremendous disproportionality between those awards, the district court rejected a due process challenge to the punitive damages award. We review that determination de novo. *Clark v. Chrysler Corp.*, 436 F.3d 594, 600 (6th Cir. 2006) (citing *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 431 (2001)).

Like its counterpart in the Fourteenth Amendment, the Fifth Amendment's Due Process Clause "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm*, 538 U.S. at 416 (citing *Cooper Indus., Inc.*, 532 U.S. at 433 and *Gore*, 517 U.S. at 562); *see also Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 750 n.12 (11th Cir. 2020) (noting that although the Supreme Court has only explicitly considered whether the Fourteenth Amendment's Due Process Clause restricts penalties imposed by a State, the same principle under the Fifth Amendment's Due Process Clause restricts penalties imposed in the context of a federal cause of action); *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 376 (4th Cir. 2008) ("A punitive damages award is subject to review for compliance with the procedural and substantive constitutional limitations of the Due Process Clause of the Fifth Amendment . . . ."). Due process thus requires that before a punitive damages award may issue, one must have received "fair notice" both of what conduct is prohibited as well as "the severity of the penalty that a State may impose" when a person commits the prohibited conduct. *State Farm*, 538 U.S.

at 417. Otherwise, the award "furthers no legitimate purpose" and "constitutes an arbitrary deprivation of property." *Id.*

We utilize three guideposts to measure whether a punitive damages award satisfies due process. They are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id*. at 418 (citing *Gore*, 517 U.S. at 575). These guideposts tightly constrain the range of constitutionally acceptable awards. For even where the jury has found an entitlement to punitive damages, the appropriate punitive damages award may still be zero. *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 1001 (6th Cir. 2007) (applying the *State Farm* factors and holding that the district court erred in upholding a jury verdict for *any* punitive damages following the jury's $32.4 million punitive damages and $10.8 million compensatory damages award). In making that threshold assessment, the "most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419 (quoting *Gore*, 517 U.S. at 575). That a defendant engaged in tortious or other wrongful conduct is thus not enough, standing alone, to justify a punitive damages award. And where few, if any, of the indicia of reprehensibility are present, the defendant's conduct is not considered sufficiently "reprehensible," for purposes of due process, to support any award. *Id.*; *see also Carroll v. Clifford Twp.*, 625 F. App'x 43, 46 (3d Cir. 2015) (holding that the district court did not err in vacating a punitive damages award where the defendant's conduct was not sufficiently reprehensible to support punitive damages and the plaintiff was awarded only nominal damages).

In more extreme cases, where many or all of the reprehensibility factors are satisfied, due process still constrains an ensuing punitive damages award. In those cases, a punitive damages "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425. A higher ratio may be justified where the compensatory damages award is relatively low, *see id.*, yet even then, a nine-to-one ratio between punitive and compensatory damages is likely the outer limit that due process will permit. *See id.* (allowing consideration of a higher than single-digit ratio "where 'a particularly

egregious act has resulted in only a small amount of economic damages'" (quoting *Gore*, 517 U.S. at 582)); *see also Arnold v. Wilder*, 657 F.3d 353, 372 (6th Cir. 2011) (reducing a punitive damages award in a § 1983 case where physical injury was minimal "so that the ratio of punitive to compensatory damages is in the single digits").

With these parameters in mind, we turn to the factors underlying the punitive damages award against Moran. Start with the reprehensibility guidepost. *State Farm* instructs that in assessing reprehensibility, we consider whether: the harm was physical rather than purely economic; the tortious conduct evinced an "indifference to or a reckless disregard of the health or safety of others"; "the conduct involved repeated actions or was an isolated incident"; and the harm resulted from "intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. Here, we can rule out some factors. Moran's conduct was an isolated incident, and it was not the result of trickery or deceit. Other factors ordinarily might weigh in favor of reprehensibility. In excessive force settings, the harm is typically physical, and the conduct could reflect a reckless disregard of the plaintiff's health or safety. But this is not a typical case. The jury found that Moran's excessive force did not injure Kidis. According to the jury's verdict, Moran's use of "excessive force" was not "a proximate cause of the injuries" to Kidis. That finding undermines one if not both of the potentially supporting reprehensibility factors. At best, in other words, Kidis barely crosses the reprehensibility threshold to support any punitive damages award.

Now consider the second guidepost—the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award. The ratio of punitive to compensatory damages here is 200,000:1, in dramatic tension with the Supreme Court's admonition that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *State Farm*, 538 U.S. at 425. The ratio for Kidis's award, in other words, is a whopping 20,000 times greater than what *State Farm*'s due process framework ordinarily would allow.

That eye-popping ratio typically would dictate that the jury's punitive damages award be deemed unconstitutionally excessive. *See Gore*, 517 U.S. at 583 ("When the ratio is a breathtaking 500 to 1, however, the award must surely 'raise a suspicious judicial eyebrow.'").

That conclusion is mitigated somewhat by our case law interpreting punitive damages awards in the § 1983 setting. Taking our cue from the Supreme Court's reminder not to apply the second *Gore* guidepost blindly and rigidly, we have adjusted our ratio analysis in the rare instance where a § 1983 plaintiff suffers an invasion of a constitutional right unaccompanied by notable physical or economic harm. *Romanski v. Detroit Ent., LLC*, 428 F.3d 629, 646 (6th Cir. 2005) (modifying the ratio analysis because "where the compensatory award is very low or nominal, '*any appreciable exemplary award would produce a ratio that would appear excessive by this measure*'" (quoting *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996))); *see also Arnold*, 657 F.3d at 370 (noting that the "ratio component of the excessiveness inquiry" is "of limited relevance" in § 1983 cases where the "plaintiff's economic injury was so minimal as to be essentially nominal" (quoting *Romanski*, 428 F.3d at 645)). Yet even where we might loosen *State Farm*'s tight constitutional vise on high-ratio awards, we customarily still reduce the punitive damages award "so that the ratio of punitive to compensatory damages" is, at the very most, "in the single digits." *Arnold*, 657 F.3d at 372 (reducing punitive damages from $1 million to $550,000, so that the ratio of punitive to compensatory damages is roughly 9:1, but reversing the district court's reduction to $229,600 in punitive damages). And those high ratios, it bears reminding, are reserved for cases with exceedingly reprehensible conduct. *Arnold*, for example, involved a verbal altercation between an officer and single mother that escalated to the point of the officer putting the mother in a chokehold and pepper spraying her in her own front yard— with the entire incident witnessed by her young children. *Id.* at 357–62.

Turning finally to the third guidepost, we compare Kidis's punitive damages award to those in comparable cases. The $200,000 punitive damages award here finds at least some support in the following cases (listed with both the actual punitive damages award and (*) that amount adjusted to 2018 dollars using the Consumer Price Index):

- $40,000/$43,000* ($1,000 in compensatory damages): A police officer pepper sprayed a plaintiff who was already handcuffed in the back of a police car. *Blackledge v. Carlone*, 126 F. Supp. 2d 224, 229 (D. Conn. 2001).

- $40,000/$90,000* ($250 in compensatory damages against each of the two defendants): A police officer provoked a plaintiff into disorderly conduct and then arrested him with excessive force, resulting in some minor physical injuries. *Schultz v. Thomas*, 649 F. Supp. 620, 625 (E.D. Wis. 1986).

- $75,000/$120,000* ($1 in nominal damages and $1,000 in compensatory damages on another claim): During an arrest the plaintiff suffered cuts and bruises to the head and at one point blacked out. *Lee v. Edwards*, 101 F.3d 805, 811 (2d Cir. 1996).

- $100,000/$106,000* ($50,845 in compensatory damages): A police officer without warning tackled plaintiff and punched him in the face. *Butler v. Windsor*, 143 F. Supp. 3d 332, 341 (D. Md. 2015).

- $100,000/$108,000* ($60,000 in compensatory damages): A police officer punched and kneed a mentally ill patient after patient kicked him in the groin. *Payne v. Jones*, 711 F.3d 85, 106 (2d Cir. 2013).

- $100,000/$174,000* ($75,000 in compensatory damages on another claim): A court officer, after helping other security guards force plaintiff to the ground through punching and kicking, continued to hit plaintiff even after the plaintiff was prone on the ground. *King v. Macri*, 993 F.2d 294, 299 (2d Cir. 1993).

- $125,000/$265,000* ($80,000 in compensatory damages): A police officer punched plaintiff in the face, and another struck him with a blackjack while plaintiff was handcuffed and in the police station. *O'Neill v. Krzeminski*, 839 F.2d 9, 13–14 (2d Cir. 1988).

- $150,000/$288,000* ($650,000 in compensatory damages): A police officer struck plaintiff in the back of the head without warning and threatened to shoot plaintiff if he tried to move. *Ismail v. Cohen*, 899 F.2d 183, 187 (2d Cir. 1990).

- $150,000/$160,000* (over $2 million in compensatory damages, subject to remittitur to determine the excessive portion of the award for economic damages): A police officer punched an unarmed and compliant suspect stating "that's how we do it." *Alla v. Verkay*, 979 F. Supp. 2d 349, 378 (E.D.N.Y. 2013).

Ranked alongside these cases, today's $200,000 award falls at the high end of the list. In each case, the plaintiff was awarded less than Kidis; in some, far less. And in all of them, the compensatory damages award dramatically outpaced the nominal award here. Equally true, these cases, from top to bottom, involved actual injury to the plaintiff, something that was notably absent here in view of the jury's causation and compensatory damages findings.

When these guideposts are considered together, some amount of punitive damages may be justified. But it is far less than the $200,000 awarded by the jury. Comparing this case to earlier ones, and keeping in mind the jury's determination that Moran did not cause any of Kidis's injuries, one might fairly conclude that the punitive damages here should be low, or perhaps even zero. At the same time, we must remain cognizant of the twin aims of punitive

damages: deterrence and retribution. *See State Farm*, 538 U.S. at 416. Taking all of these considerations together, the maximum punitive damages award supported by due process here is $50,000. *See Bach v. First Union Nat'l Bank*, 486 F.3d 150, 155 (6th Cir. 2007) (setting a "constitutional maximum" for punitive damages in that particular case equal to compensatory damages of $400,000 "in the interests of the parties and the general spirit of preserving limited judicial resources" (citing *Romanski*, 428 F.3d at 649–50 and *Clark*, 436 F.3d at 612)).

Kidis cites no authority compelling a different conclusion. *Romanski*, to start, is distinguishable in at least three notable respects. One, it was not a nominal damages case; the plaintiff was awarded, among other amounts, $270 for emotional distress. *Romanski*, 428 F.3d at 643. Two, the case involved some actual harm to the plaintiff in the form of emotional distress. And three, even in that context we reduced the punitive damages award to $600,000 to comport with due process. *Id*. at 649. Crucially, we arrived at that figure by reasoning that a higher-than-normal punitive damages award was needed to deter the defendant casino, which generated over one million dollars a day in revenue. *Id*. at 649–50. *Romanski*'s rather large punitive damages award was thus related to the unique circumstance where the defendant is a "deeply pocketed company," as opposed to "the typical § 1983 case" where "the defendant is an individual police officer." *Id*. at 647. Far from those unique circumstances, Moran serves as a rank-and-file public servant.

Equally unavailing is *Johnson v. Howard*. 24 F. App'x 480 (6th Cir. 2001) (per curiam). There, the jury awarded $30,000 in compensatory damages and $300,000 in punitive damages to a § 1983 plaintiff who was "savagely beaten while his hands were secured behind his back" by a prison guard "without provocation." *Id*. at 484, 486. Setting aside the fact that *Johnson* would justify at most only a 10:1 ratio, even in a § 1983 action, *Johnson* was not a case (like this one) where the jury awarded nominal damages and found that the officer in question did not harm the plaintiff.

The dissenting opinion, we recognize, would uphold the entire punitive damages award. But it does so by never mentioning the jury's critical finding that Moran's conduct was *not* "a proximate cause of the injuries" to Kidis. Take, for instance, the reprehensibility guidepost. The dissenting opinion believes it is satisfied because "Moran was indifferent to Kidis's safety" and

"Kidis suffered physical harm," even when the jury has told us that Moran did not injure Kidis. Or take the ratio guidepost, where the dissenting opinion justifies the award on the ground that "significant harm was likely to result from the multiple punches and blows Moran inflicted to Kidis's head and face," making Moran's conduct "egregious." But why speculate on the "likely" result of Moran's conduct when we know the actual result, thanks to the jury's "no injury" finding. So too for the third guidepost, the comparable civil cases. True, the dissenting opinion explains, the Second Circuit upheld a large punitive damages award in *Payne*. Setting aside the fact that the Second Circuit reduced the $300,000 punitive damages award there to $100,000 on appeal, it bears noting that *Payne* involved both an actual injury caused by the defendant's conduct—a bloody face, back pain, and post-traumatic-related stress—and a sizable $60,000 compensatory damages award. 711 F.3d at 88. *Payne* is thus a poor guide for a case like this one involving no injury and a $1 nominal compensatory damages award. The same for *Alla*, which resulted in an award of hundreds of thousands of dollars in compensatory damages to a plaintiff who experienced long-term injuries ranging from headaches and restricted jaw use to the inability to exercise and lasting short-term memory loss. 979 F. Supp. 2d at 365, 372.

The bottom line is that the jury has spoken on the critical issues before us: injury and damage. The Seventh Amendment guaranteed Kidis the right to have a jury resolve those disputed factual issues. *See Dimick v. Schiedt*, 293 U.S. 474, 476–78 (1935). At the same time, the Due Process Clause places upon us a duty to examine the propriety of the jury's punitive damages award. Today's resolution respects both of those constitutional priorities.

All of this said, our decision should not be read as minimizing the seriousness of the use of excessive force by police. Nor, for that matter, do we seek to shield rogue officers from liability. We merely seek to honor the overriding considerations before us: the jury's verdict and the due process limits on that verdict. With the jury having spoken on the absence of harm inflicted by Moran, due process does not justify a $200,000 punitive damages award. At most, it sanctions a $50,000 award. We therefore reduce the award to that amount.

*Qualified immunity.* Moran next takes issue with the district court's denial of his request for summary judgment on the basis of qualified immunity. Moran did not challenge that decision through an interlocutory appeal. But he does so today, arguing that he did not violate Kidis's

clearly established rights when he was responding to a potentially dangerous situation requiring split-second judgment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that government officials are generally entitled to immunity from civil damages as long as they did not "violate clearly established statutory or constitutional rights"); *see also Latits v. Phillips*, 878 F.3d 541, 550 (6th Cir. 2017) (noting that, in the qualified immunity context, we "view the facts with due deference to the quick decisions [an officer has] to make in a tense, uncertain, and rapidly evolving situation").

Because qualified immunity is a defense from trial, we afford a government official the right to take an interlocutory appeal to contest the denial of qualified immunity at summary judgment. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). One who foregoes that right, however, has not forever forfeited his ability to further raise the issue. *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011) ("A qualified immunity defense, of course, does not vanish when a district court declines to rule on the plea summarily."); *see also* Ivan E. Bodensteiner & Rosalie B. Levinson, *State and Local Government Civil Rights Liability* § 2:18 (2020) ("Most courts hold that [choosing to bypass interlocutory appeal of an order denying immunity by proceeding to trial] does not foreclose [the defendants] from raising the qualified immunity defense on appeal from a final judgment."). But the mechanics of preserving the defense are somewhat less clear. *Ortiz* held that a defendant forfeits appellate review of a sufficiency-of-the-evidence-based qualified immunity defense when he fails to raise the issue through a Rule 50 motion. 562 U.S. at 191–92; s*ee also Ayers v. City of Cleveland*, 773 F.3d 161, 168 (6th Cir. 2014) ("Even if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion." (citations and alterations omitted)); *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) (holding that "the Defendants have waived [their qualified immunity] claim by failing to raise the matter in their Rule 50(a) motion prior to the district court's submission of the case to the jury"). At the same time, *Ortiz* expressly left open the question of whether this procedural requirement applies only to a defendant's evidence-based arguments, or also applies to a defendant who, like Moran, raises a "purely legal" challenge regarding qualified immunity. *Ortiz*, 562 U.S. at 190–92. The answer to that open question could have consequences for Moran, who did not file a Rule 50 motion here.

Assuming the issue is live, Moran's argument nonetheless fails. As the record before the jury reflected, when Moran discovered Kidis, Kidis was shirtless, shoeless, intoxicated, badly scratched, and on the ground, face down and with his hands out, having tired from a lengthy flight from the police. At that point, it was visually obvious that Kidis was not a threat or a flight risk. And while it was conceivable that Moran would need to apply some force to arrest Kidis safely, there was no conceivable need for Moran to knee strike, choke, and punch Kidis once Moran was on top of Kidis while Kidis was making no effort to resist arrest. Once Moran had physical control over the surrendering and unresisting Kidis, Moran's subsequent aggression violated Kidis's clearly established right to be free from excessive force. *Coley v. Lucas County*, 799 F.3d 530, 540 (6th Cir. 2015) (explaining that individuals have "a clearly established right not to be gratuitously assaulted while fully restrained and subdued" and that under the Fourth Amendment, "assaults on subdued, restrained and nonresisting . . . arrestees . . . are impermissible").

*Attorney's fees award to Kidis.* Defendants next challenge the district court's award of $143,787.97 in attorney's fees and costs to Kidis. 42 U.S.C. § 1988 grants a district court the discretion to award reasonable attorney's fees to the prevailing party in a § 1983 action. Here, the district court held that as a prevailing § 1983 plaintiff, Kidis was entitled to reasonable attorney's fees and costs.

Starting with Kidis's entitlement to attorney's fees, we review de novo the district court's determination that Kidis was a "prevailing party" for purposes of § 1988. *Miller v. Caudill*, 936 F.3d 442, 448–52 (6th Cir. 2019). While Kidis's compensatory damages award amounted to just $1, Kidis was a prevailing party as a matter of law. "[A] plaintiff who wins nominal damages is a prevailing party under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *see also Pouillon v. Little*, 326 F.3d 713, 716 (6th Cir. 2003). That the jury awarded Kidis nominal damages on his excessive force claim against Moran transformed him into a prevailing party. While relevant, the nominal nature of Kidis's recovery speaks only to the *amount* of attorney's fees permissible, not whether the party is eligible to recover attorney's fees. *Farrar*, 506 U.S. at 114 ("Although the 'technical' nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988.").

Turning then to the amount of the award, Defendants suggest that the award was unreasonable because the district court dismissed most of Kidis's claims—both his claims for deliberate indifference against both officers as well as his excessive force claim against Reid. We afford "substantial deference" to a district court's determination of the amount of a § 1988 award out of respect for the "district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 634 (6th Cir. 2009) (quoting *Wilson–Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (internal quotations and alterations omitted).

We begin with the understanding that a district court's attorney's fees award under § 1988 should compensate a plaintiff for "time . . . reasonably spent" by his counsel "in achieving the favorable outcome, even if the plaintiff failed to prevail on every contention." *Hescott v. City of Saginaw*, 757 F.3d 518, 526 (6th Cir. 2014) (quoting *Fox v. Vice*, 563 U.S. 826, 834 (2011)). The award here comfortably fits this standard. While Kidis was unsuccessful on his deliberate indifference claims against Defendants as well as his excessive force claim against Reid, those claims were nonetheless "based on a common core of facts" also underlying his successful excessive force claim against Moran. *Id.* (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996)). All of Kidis's claims arose out of his arrest by Moran and its attending consequences. While a plaintiff is not entitled to fees "for work performed on claims that bore no relation to the grant of relief or were otherwise frivolous," none of Kidis's claims were unrelated to the relief he received (nor were they frivolous, as we explain below). *Id.* (quoting *Fox*, 563 U.S. at 834) (internal quotation marks omitted). And while those claims were unsuccessful, district courts should "not reduce attorney fees based on a simple ratio of successful claims to claims raised." *Id.* (quoting *Thurman*, 90 F.3d at 1169).

Neither *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983), nor *Allen v. Allied Plant Maint. Co. of Tenn.*, 881 F.2d 291, 299–300 (6th Cir. 1989), leads us to think otherwise. *Hensley* merely reiterates the uncontested proposition that a district court may reduce a fee award for work the attorney expended pursuing unsuccessful claims that were "distinctly different claims for relief that are based on different facts and legal theories" from the successful claim. 461 U.S.

at 434. But that does not describe Kidis's unsuccessful claims. *Allen*, for its part, does not even discuss § 1983 or § 1988. 881 F.2d at 293. Accordingly, the district court did not abuse its discretion in awarding Kidis attorney's fees pursuant to § 1988.

*Attorney's fees claimed by Reid.* Next up is Reid's claim for attorney's fees. Section 1988's authorization of attorney's fees to a prevailing party has two dimensions. Not only are prevailing § 1983 plaintiffs eligible for a fee award, so too are prevailing defendants. As to the latter, § 1988 permits an award "upon a finding [by the district court] that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Michigan Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 433 (6th Cir. 2017) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). We review the district court's decision on the matter for an abuse of discretion. *Id*.

Prevailing § 1983 defendants face a higher bar than their prevailing plaintiff counterparts. *Schropshire v. Smith*, 50 F.3d 10, 1995 WL 118983, at *2 (6th Cir. 1995) (per curiam) (unpublished table opinion) (citing *Hughes v. Rowe*, 449 U.S. 5, 14–15 (1980)). Because "awarding fees against a losing civil rights plaintiff is 'an extreme sanction,'" we are somewhat reluctant to sanction that result, typically doing so only in "truly egregious cases of misconduct." *Sagan v. Sumner Cnty. Bd. of Educ.*, 501 F. App'x 537, 541 (6th Cir. 2012) (per curiam) (quoting *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001)). That a defendant prevailed in a case, in other words, is an insufficient basis to entitle the defendant to an attorney's fee award. In that respect, we must be careful not to "engage in *post hoc* reasoning" that an unsuccessful plaintiff's decision to pursue the "action must have been unreasonable or without foundation." *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994) (quoting *Christiansburg Garment*, 434 U.S. at 421–22).

Measured against that relatively high bar, Reid's claims fall short. The district court granted summary judgment to Reid on Kidis's claim for excessive force because Reid did not actively participate in the arrest at the heart of Kidis's complaint. Reid was similarly awarded summary judgment on Kidis's deliberate indifference claim because Kidis could not show that Reid was aware of his medical needs. But at least some aspects of the record suggested that Reid was near the scene of the arrest, making Kidis's excessive force claim against Reid at least

facially plausible. As to the dismissed deliberate indifference claim, the district court found that once at the station, Kidis's condition was obviously medically serious, thereby satisfying the objective element of deliberate indifference. Kidis's claim instead failed the subjective element. Even the most critical Monday-morning quarterback would have difficulty saying that the claims here were frivolous, unreasonable, or without foundation. *See Schropshire*, 1995 WL 118983, at *2 (affirming a district court's refusal to award a prevailing defendant attorney's fees pursuant to § 1988 because while the "Plaintiffs were not able to prove their claims . . . they did have a real grievance, and they did present evidence at trial in an effort to support their claims"). Because Kidis's claims were made with a sufficient ring of plausibility, the district court did not abuse its discretion in finding that Kidis's claims were not "truly egregious," making them worthy of sanction. *Cf. N.E. v. Hedges*, 391 F.3d 832, 836 (6th Cir. 2004) (affirming a district court's imposition of § 1988 sanctions against an unsuccessful plaintiff who presented a frivolous legal "theory that would invalidate the paternity and child support laws of the fifty states and the federal acts on child support . . . . [and is] so foreign to our legal tradition that it has no 'foundation,' no chance of success").

*Sanctions against Kidis's counsel.* We are left with one final issue: the district court's refusal to sanction Kidis's counsel under 28 U.S.C. § 1927 for allegedly causing additional expense to Defendants by objectively falling short of obligations to the bar and the court. We review a district court's denial of § 1927 sanctions under an abuse of discretion standard. *Green v. City of Southfield*, 925 F.3d 281, 286 (6th Cir. 2019).

Section 1927 grants the district court the authority to impose attorney's fees and other costs directly on attorneys who "unreasonably and vexatiously" multiply litigation. A district court may do so when an attorney objectively "falls short of the obligations owed by a member of the bar to the court." *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968 (6th Cir. 2018) (quoting *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)). While subjective bad faith is not required, the attorney in question must at least knowingly disregard the risk of abusing the judicial system, not be merely negligent. *Id*.

Kidis's counsel's conduct falls far short of that which would mandate sanctions. While Kidis was unsuccessful on some claims, he and his counsel did point to evidence suggesting that

the basis for those claims was at least plausible. Evidence showed that Reid may have been present at the arrest leading to this lawsuit, and that both officers were nearby when Kidis was denied medical attention. Albeit in the context of a district court's inherent authority to sanction (as opposed to the court's § 1927 authority), we have noted that "the mere fact that an action is without merit does not amount to bad faith"—there must be "something more," such as "making improper use of the courts." *Stalley ex rel. United States v. Mountain States Health All.*, 644 F.3d 349, 352 (6th Cir. 2011) (quoting *BDT Products, Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753–54 (6th Cir. 2010)). Defendants have not identified any particular instances of Kidis's counsel abusing the court system to warrant sanctions.

Defendants analogize today's case to *Ridder v. City of Springfield*, 109 F.3d 288 (6th Cir. 1997). But the conduct in question there was egregious: an attorney pursued a municipal liability claim for five years without offering any evidence that individual officers had acted pursuant to a municipal policy, custom, or usage despite the benefit of a full discovery period. *Id*. at 297–98. Indeed, counsel persisted even after a warning from the court that he was in danger of becoming liable under § 1927. *Id*. Contrast that situation to the one here. Kidis's claims against Reid were plausible. And when they failed at the summary judgment stage, Kidis's counsel made no effort to pursue them further. That is miles away from the conduct of the *Ridder* attorney, whom we faulted for pursuing his case "long after it should have become clear that the claims lacked any plausible factual basis." *Id*. at 298. The district court thus did not abuse its discretion when it refused to sanction Kidis's attorney pursuant to § 1927.

## CONCLUSION

The district court's judgment is **REVERSED** and **REMANDED** with instructions to enter an order of remittitur reducing the punitive damages to no more than $50,000. We **AFFIRM** the remaining aspects of the judgment challenged on appeal.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

I join the majority opinion regarding the qualified immunity, attorneys fees, and sanctions issues on appeal. However, I respectfully dissent in part, because I do not agree that the Due Process Clause of the Fifth Amendment requires us to arbitrarily reduce the jury's punitive damages award to the sum of $50,000. I would affirm the judgment of the district court and, accordingly, I respectfully concur in part and dissent in part.

## I.

The Supreme Court has instructed us to consider three "guideposts" when evaluating whether a punitive damages award offends the constitutional guarantee of Due Process: the degree of reprehensibility of the defendant's conduct; the ratio between the punitive and compensatory awards; and sanctions for comparable misconduct. *BMW of North America v. Gore*, 517 U.S. 559, 576–84 (1996). The majority opinion takes issue with how the district court weighed these factors and orders a remittitur. In my view, however, the district court properly balanced them. I would therefore affirm its denial of defendant John Moran's motion for remittitur.

## A.

"Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Id.* at 575. Simply, "some wrongs are more blameworthy than others." *Id.* We evaluate the degree of reprehensibility by considering whether: "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). These are

considerations, not requirements. *Id.* And there is a presumption with these factors: we presume that compensatory damages make a plaintiff whole; thus "punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions *to achieve punishment or deterrence*." *Id.* (emphasis added).

"[E]xemplary [or punitive] damages imposed on a defendant should reflect the enormity of his offense." *Gore*, 517 U.S. at 575 (internal quotation marks omitted). Violent behavior is deplorable and is conduct warranting punitive damages. *See id.* at 575–76. And when a police officer administers his own version of punishment on a subject to "teach [him] a lesson," the officer's action is particularly reprehensible. *See Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008) ("The reprehensibility of [a police officer]'s conduct in his position of public trust justifies a *substantial* punitive damages award" when it involves *police brutality*. (emphasis added)); *see also McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 739 (6th Cir. 2002) (violent and intentional conduct by police officers exhibits reprehensibility); *Johnson v. Howard*, 24 F. App'x 480, 486 (6th Cir. 2001) ("[The plaintiff] presented uncontroverted evidence tending to show that he was savagely beaten while his hands were secured behind his back; moreover, this beating was administered by someone in a position of authority. [The officer]'s conduct exhibits a high degree of reprehensibility."); *cf. Casillas-Diaz v. Palau*, 463 F.3d 77, 81–82 (1st Cir. 2006); *DiSorbo v. Hoy*, 343 F.3d 172, 186–87 (2d Cir. 2003).

And that is what occurred here. As the majority opinion concedes, "there was no conceivable need for Moran to knee[,] strike, choke, and punch Kidis once Moran was on top of Kidis while Kidis was making no effort to resist arrest." Furthermore, Moran did so while saying, "We're going to teach you for running motherf--ker. We're going to get you," and that "he was going to kick [Kidis's] ass because he was angry that [Kidis] ran." Thus, at least three of *Gore*'s reprehensibility considerations are present: Moran was indifferent to Kidis's safety; Moran acted with intentional malice; and Kidis suffered physical harm.

My colleagues reason to the contrary, focusing almost entirely on the jury's compensatory damages award. However, just because the jury did not compensate Kidis for his injuries does not also mean he suffered no physical harm. *See, e.g.*, *Romanski v. Detroit Entm't,*

*LLC*, 428 F.3d 629, 644 (6th Cir. 2005) (commenting that it is more important to focus on "the fundamental nature of [the defendant]'s conduct" than the injury's label). And even if so, that fact, in my view, bears no consideration on whether Moran either demonstrated reckless disregard for plaintiff's safety or acted with intentional malice.

In sum, the district court correctly concluded the degree-of-reprehensibility factor weighs heavily in plaintiff's favor.

B.

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Gore*, 517 U.S. at 580. "[E]xemplary damages must bear a reasonable relationship to compensatory damages." *Id.* (internal quotation marks omitted). This, however, is not a bright-line rule but rather a "guidepost." In this regard, the Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award." *Id.* at 582. With that said, the Court has cautioned that the higher the ratio, the more discerning our review must be. *Id.* at 583; *see also State Farm*, 538 U.S. at 425.

The district court concluded this factor, while seemingly weighing in Moran's favor given the 200,000 to 1 ratio, was neutral. I agree. It correctly observed that our caselaw makes clear that in § 1983 cases like this one, the ratio inquiry is of "limited relevance." *Arnold v. Wilder*, 657 F.3d 353, 370 (6th Cir. 2011) (citation omitted and collecting cases). Moreover, *Gore* commands that the "proper inquiry" for examining the ratio is "whether there is a reasonable relationship between the punitive damages award and *the harm likely to result* from the defendant's conduct as well as the harm that actually has occurred." 517 U.S. at 581 (citation omitted). Although the jury awarded nominal damages to Kidis given the circumstances of this case, it is certainly reasonable to conclude that significant harm was likely to result from the multiple punches and blows Moran inflicted to Kidis's head and face. The majority opinion overlooks this component of *Gore*.

Finally, *Gore* makes clear that a "low award[] of compensatory damages may properly support a higher ratio . . . if, for example, a particularly egregious act has resulted in only a small amount of economic damages." *Id.* at 582. As set forth above, a police officer who knees a non-resisting suspect in the back and then chokes and punches him in the name of a "lesson" is particularly egregious conduct warranting substantial punitive damages for the purpose of punishing and deterring police brutality. The majority, however, does not appear to view Moran's conduct as egregious, and thus adopts the "categorical approach" that *Gore* forbids: that solely because the ratio is disproportionate, the Fifth Amendment requires its reduction to the arbitrary sum of $50,000.[1]

C.

"Comparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third indicium of excessiveness." *Id.* at 583. "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice . . . of the severity of the penalty that [could be] impose[d]." *Id.* at 574. The question therefore under this guidepost is "not whether similar punitive awards for similar conduct were held constitutional in prior cases but whether the [defendant] had fair notice that conduct of the sort that occurred . . . *might result* in penalties, fines, or punitive damages" in the amount levied by the jury. *Romanski*, 428 F.3d at 648 (emphasis added).

After extensively reviewing numerous cases involving police officers who used excessive force, the district court concluded that Moran had fair notice that his conduct might result in a $200,000 punitive damages award (when factoring in inflation to adjust prior awards to current amounts). It collected several cases, ranging from $58,000 to $294,000 in punitive damages. I agree that these cases provided Moran with the requisite notice.

---

[1]Curiously, this sum is itself well outside the majority's "single-digits" test that it relies on (in name only) to order a remittitur. Why is this judge-made 50,000:1 ratio compatible with the Due Process Clause when the jury's 200:000:1 ratio is not? The majority cannot say.

Consider, for example, *Payne v. Jones*, 711 F.3d 85 (2d Cir. 2013), where a handcuffed, mentally ill patient kicked an officer in the groin, the officer responded by punching the patient "in the face and neck seven to ten times and knee[d] him in the back several times," and the plaintiff was awarded over $100,000 in punitive damages after adjusted for inflation. *Id.* at 88, 90. Or take *Alla v. Verkay*, 979 F. Supp. 2d 349 (E.D.N.Y. 2013), where an officer punched a plaintiff one time during an arrest, saying "That's how we do it," and the jury awarded over $160,000 in punitive damages after adjusted for inflation. *Id.* at 354, 358. Also consider one of the cases Moran presses on appeal, *Schultz v. Thomas*, 649 F. Supp. 620 (E.D. Wis. 1986). That was also an excessive force case, where one officer pulled a gun without justification and then taunted and threatened the plaintiff. *Id.* at 625. Another officer shoved the plaintiff, twisted the plaintiff's arms behind his back, held the plaintiff by the hair, and pushed the plaintiff's head down onto the roof of the squad car. *Id.* The physical injury? Bumps and bruises that healed within two weeks. *Id.* The jury awarded $160,000 in punitive damages, which the court reduced to $80,000 ($40,000 per defendant). But *Schultz* is a case from 1986. Adjusted for inflation, it amounts to nearly $185,000 total for comparable conduct.

My colleagues agree that punitive damages are both appropriate here and that a $200,000 punitive damages award "finds at least some support" in the caselaw. Indeed, they have similarly cataloged "comparable" awards that demonstrate Moran had notice that a punitive damages award for similar conduct "*might result* in" (and even surpass) the jury's award here. *Romanski*, 428 F.3d at 648 (emphasis added). Yet given their view of the two other factors, the majority opinion arbitrarily reduces the punitive damages award to $50,000. I cannot agree. The jury's role as the factfinder and its verdict regarding the reasonable amount of punitive damages necessary to punish and deter police brutality deserve greater respect.

II.

Punitive damages are awarded not to compensate but to punish and deter reprehensible conduct. *State Farm*, 538 U.S. at 419. And that is what occurred here. As found by the jury, Officer Moran's conduct was excessive force and gratuitous violence against a non-resisting suspect. In light of similar punitive damages awards, Moran had fair notice that this conduct

might result in the award of $200,000 in punitive damages. Under these circumstances, the jury's punitive damages verdict does not violate our Constitution.

For these reasons, I respectfully concur in part and dissent in part. I would affirm the judgment of the district court.