NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0098n.06

Case Nos. 22-1075/1097/1131

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MARVIN GERBER (22-1097/1131); DR. MIRIAM BRYSK (22-1075/1131),

    Plaintiffs - Appellants/Cross - Appellees,

v.

HENRY HERSKOVITZ; GLORIA HARB; TOM SAFFOLD; RUDY LIST; CHRIS MARK,

    Defendants - Appellees/Cross - Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 22, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: SUTTON, Chief Judge; CLAY and McKEAGUE, Circuit Judges.

SUTTON, Chief Judge. Congregants of the Beth Israel Synagogue in Ann Arbor wanted to put a stop to the anti-Israel picketing of their Saturday worship services. They sued the protesters, city, and city officials. After we affirmed the dismissal of the complaint, the district court granted attorney's fees to the protester defendants under 42 U.S.C. § 1988. Finding no abuse of discretion, we affirm.

I.

After enduring sixteen years of anti-Israel picketing at their weekly worship service, congregants of the Beth Israel Synagogue had had enough. Two congregants, Marvin Gerber and Dr. Miriam Brysk, filed a lawsuit, seeking to enjoin the protests.

The district court dismissed their complaint for lack of standing. *Gerber v. Herskovitz*, No. 19-13726, 2020 WL 4816145, at *4 (E.D. Mich. Aug. 19, 2020). We affirmed, but on different grounds. *Gerber v. Herskovitz*, 14 F.4th 500, 512 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 1369 (2022), *and cert. denied*, 142 S. Ct. 2714 (2022). We held that the congregants had standing, but the complaint nevertheless failed to state a claim under Civil Rule 12(b)(6). *Id.* at 506, 512. Judge Clay concurred. He reasoned that the congregants lacked standing because they had not shown the invasion of a legally protected interest and they lacked even "a colorable legal claim" against the protesters. *Id.* at 514–15 (Clay, J., concurring).

Back in the district court, the prevailing protesters moved for attorney's fees under 42 U.S.C. § 1988 and for sanctions under 28 U.S.C. § 1927 and the court's inherent authority. The district court granted the motion in part, awarding $158,721.75 in attorney's fees. The two congregants separately appealed, and the protesters filed a protective cross-appeal.

## II.

A court may award reasonable attorney's fees to a prevailing civil rights defendant after finding the lawsuit "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *see also* 42 U.S.C. § 1988; *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam) (applying *Christiansburg* to § 1983 actions). Two competing principles guide today's review. On the one hand, this court reviews fee awards for abuse of discretion. *Garner v. Cuyahoga Cnty. Juv. Ct.*, 554 F.3d 624, 634 (6th Cir. 2009). On the other hand, awarding fees to a prevailing civil rights defendant is "an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).

(As a side note, the district court awarded fees under § 1988 jointly and severally against the congregants and one of their attorneys, Marc Susselman. An award under § 1988 "may only

be charged against the losing party," however, "not the party's attorney." *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1374 n.1 (6th Cir. 1987); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 & n.9 (1980). But the congregants opted not to raise this non-jurisdictional issue on appeal, leaving us to accept the parties' framing of the issue.)

The district court did not abuse its discretion by awarding fees to the prevailing protesters. The congregants brought seven federal civil rights claims against the protesters. Each claim plainly lacked one or more elements required under settled precedent. The § 1981 claim lacked any allegation that the congregants "lost out on the benefit of any 'law or proceeding.'" *Gerber*, 14 F.4th at 510. The § 1982 claim did not implicate a property interest, because the protesters never prevented the congregants "from using their synagogue." *Id.* at 511. The § 1983 claim lacked any semblance of state action. *Id.* So too for the § 1985(3) claim. *Id.* And the civil conspiracy claims under §§ 1982, 1983, and 1985(3) failed in short order because the congregants did not plead any "facts showing a single plan or a conspiratorial objective to deprive them of their rights." *Id.*

These kinds of unsupported claims permitted the district court to treat them as frivolous under *Christiansburg*. "[U]nambiguous" precedent "clearly barred" each civil rights claim. *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985). Through even the most cursory legal research, the congregants would have found that "no case law supported [their] arguments under §§ [1981, 1982, 1983, and] 1985." *Royal Oak Ent., LLC v. City of Royal Oak*, 316 F. App'x 482, 487 (6th Cir. 2009). And the congregants did not identify any reasonable basis for expanding the well-settled precedent interpreting and applying these statutes. Nor did complicating questions of fact arise during the pendency of the case. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 438 (6th Cir. 2009) (finding "legitimate" questions of fact and law precluded fee award).

With no factual or legal foundation to speak of, the civil rights claims against the protesters meet the *Christiansburg* standard.

The congregants offer a medley of counterarguments.

They start with the standard of review, arguing that this court should review the district court's legal conclusions anew. But the abuse of discretion standard already captures this point, because "[m]istakes of law by definition constitute an abuse of discretion." *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

What of the broader First Amendment issues implicated by the complaint, the congregants ask? The protesters' defense that their conduct enjoyed First Amendment protection, to be sure, "require[d] a context-driven examination of complex constitutional doctrine." *Gerber*, 14 F.4th at 508. But that does not help the congregants. Our First Amendment analysis largely centered on the claims against the city, *see id.* at 508–10, and the city did not seek fees. Whatever the difficulties of the broader First Amendment principles implicated by the lawsuit, the civil rights claims against the protesters turned on plainly inapplicable statutes.

The congregants make much of our statement in *Gerber* that their "claims may be wrong and ultimately unsuccessful, but the fourteen pages that the concurrence devotes to analyzing the constitutional issues belie the conclusion that they are frivolous." *Id.* at 508. This statement, as they see it, precludes fees. But it's not that simple. The fee issue was not before us in *Gerber*; what was before us was a question of subject matter jurisdiction. We considered only whether the complaint's deficiencies were so weak that they "raise[d] a jurisdictional problem." *Id.* Courts may dismiss a complaint for lack of subject matter jurisdiction due to the inadequacy of a federal claim "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted). That does not happen often; it happens indeed only in vanishingly rare settings. That inquiry sets a much higher bar than *Christiansburg*'s "frivolous, unreasonable, or without foundation" standard. 434 U.S. at 421. The fee award cases confirm as much. We have routinely approved the award of fees to prevailing defendants without finding that the defects in the merits of the claims stripped the court of subject matter jurisdiction. *See, e.g.*, *Garner*, 554 F.3d at 636–41; *Dubay v. Wells*, 506 F.3d 422, 431–32 (6th Cir. 2007); *Wolfe v. Perry*, 412 F.3d 707, 720–21 (6th Cir. 2005); *N.E. v. Hedges*, 391 F.3d 832, 836 (6th Cir. 2004); *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 823–24 (6th Cir. 2000); *Bowman v. City of Olmsted Falls*, 802 F. App'x 971, 974–75 (6th Cir. 2020); *Bagi v. City of Parma*, 795 F. App'x 338, 343–45 (6th Cir. 2019) (per curiam).

The congregants point out that the district court denied a stay without bond pending the appeal of the fee order. But that herring is red. The court's order shows only that their *appeal* was "not frivolous." R.119 at 8. We agree and would not sanction them for bringing it. Whether an appeal raises non-frivolous issues differs from whether the underlying complaint raises non-frivolous claims.

Gerber claims that the court could not assess fees against the congregants before this court's dismissal under Civil Rule 12(b)(6) because the frivolousness of the claims became evident only at that point. But district courts may award fees when, as here, a claim "was clearly defective at the outset of the case." *Wolfe*, 412 F.3d at 721.

The congregants say that the district court acted as a Monday-morning quarterback. The Supreme Court, it is true, has directed courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable." *Christiansburg*, 434 U.S. at 421–22. This court has found

impermissible hindsight logic when a case required extensive discovery or involved unsettled law. *E.g.*, *Tarter v. Raybuck*, 742 F.2d 977, 988 (6th Cir. 1984). But neither factual nor legal disputes beset the civil rights claims against the protesters. Because the claims' deficiencies appeared at the outset, no impermissible *post hoc* reasoning occurred. *See Bagi*, 795 F. App'x at 343.

Gerber argues that the protesters' failure to pursue Rule 11 sanctions dooms the fee award. Not only does Gerber fail to cite any authority for this point, but this court's precedent also confirms the opposite view. *See Dubay*, 506 F.3d at 432 (distinguishing fees under § 1988 from sanctions under Rule 11).

The congregants assert that the protesters challenged only the § 1983 claim as frivolous in their renewed fees motion. To the contrary, the protesters wrote in the motion that the "entire complaint" was frivolous, R.84 ¶ 3, and in their opening brief that the "entire case" lacked merit, *id.* at 30; *see also* R.96 at 7 (arguing that the claims under §§ 1981, 1982, 1983, and 1985(3), and the civil conspiracy claims "were equally without merit and lacking any arguable factual or legal basis"). Because the district court could find all of the claims against the protesters frivolous, it did not need to disaggregate fees for the frivolous claims from fees for the non-frivolous claims. *See Fox v. Vice*, 563 U.S. 826, 834–35 (2011). What is more, the congregants failed to make this argument before the district court. Below, Gerber described the motion as "based primarily on the" § 1983 claims, R.99 at 11, and never disclaimed the possibility of fees for the other civil rights claims. And Dr. Brysk never even alluded to the issue. The congregants failed to preserve the issue for appeal. *See Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996).

The possibility of chilling future civil rights plaintiffs does not warrant a different conclusion. The exacting standard for awarding fees to defendants already accounts for this chilling effect. *See Kidis v. Reid*, 976 F.3d 708, 722 (6th Cir. 2020). It balances the goal of

6

encouraging plaintiffs to vindicate their civil rights with the opposing goal of compensating defendants for having to answer frivolous lawsuits. That the district court could award fees to the protesters under this standard means this balance weighs against the congregants today.

The congregants fault the court for including fees for time spent on the unsuccessful standing arguments. They cite three cases to support their contention that the fee award must exclude this time. But they are all inapposite. *Hensley v. Eckerhart*, 461 U.S. 424 (1983), explained that a partially prevailing civil rights plaintiff may recover only for the time spent on successful claims. *Id.* at 435. But *Hensley* considered claims for relief in a complaint, not different arguments or bases for dismissal in a motion to dismiss. The Court went on to say that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.* Here, the protesters raised two grounds (Civil Rules 12(b)(1) and 12(b)(6)) to achieve the desired outcome (dismissal). And *In re Bavelis*, 743 F. App'x 670 (6th Cir. 2018), and *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), both dealt with sanctions under a court's inherent authority, not under § 1988.

Gerber—who retained new counsel for this appeal—insists that the court should leave him out of it and just sanction the congregants' counsel, Marc Susselman, under § 1927. He adds that, as a lay person, he did not understand the nuances of the First Amendment and civil rights law. While we sympathize with Gerber, courts hold litigants responsible for their attorneys' conduct. *Garner*, 554 F.3d at 644. The district court did not abuse its discretion in awarding fees under § 1988, as opposed to another mechanism, after finding that the standard had been met. *See id.*

Lastly, Susselman, of his own accord, accuses the district court of antisemitism. The basis for this serious allegation? A "series of questionable rulings." Dr. Brysk's Br. 32. Not content to

7

stop there, Susselman accuses Judge Clay of racially motivated hypocrisy too. Well-founded allegations of judicial bias, we appreciate, deserve a serious-minded accounting. But Susselman grounds his allegations almost entirely in adverse rulings, which rarely "constitute a valid basis for a" claim of judicial bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The only external source for the allegation is a study supposedly finding higher-than-average rates of antisemitic attitudes in the African American community. From this, Susselman concludes that the district judge—who is African American—must have been biased against the congregants. This argument rests on offensive, essentialist stereotypes. It involves enormous logical leaps. And it disserves Susselman's client by distracting from the merits of the fee issue. If this is the quality of Susselman's advocacy, the fee award hardly comes as a surprise. Susselman's bias arguments "find no support in the record," *Dixon v. Clem*, 492 F.3d 665, 679 (6th Cir. 2007), and are "not well received," *Gerber*, 14 F.4th at 519 n.4 (Clay, J., concurring) (quotation omitted).

We affirm.